ELAINE L. CHAO, SECRETARY OF LABOR,            )
UNITED STATES DEPARTMENT OF LABOR              )
      Plaintiff,                                   )
                                                   )      No. 1:04-CV-1(lead case)
v.                                             )
                                                   )      Chief Judge Curtis L. Collier
                                                   )
USA MINING INC., USA BULLION RESOURCES,        )
INC., BUGSY MALONE'S SPEAKEASY, LLC,           )
and DAN GEIGER, AN INDIVIDUAL,                 )
      Defendants.                                  )
                                                   )

---

                                                   )
                                                   )
PENSION BENEFIT GUARANTY CORPORATION,          )      No. 1:04-CV-138 (consolidated)
      Plaintiff,                                   )
                                                   )
v.                                             )
                                                   )
USA MINING INC., USA BULLION RESOURCES,        )
INC., BUGSY MALONE'S SPEAKEASY, LLC,           )
and DAN GEIGER, AN INDIVIDUAL,                 )
      Defendants.                                  )

## MEMORANDUM

Defendant Dan Geiger ("Geiger") filed a motion to dismiss the consolidated civil actions

brought by Plaintiffs Elaine Chao, Secretary of Labor ("Chao"), and the Pension Benefit Guaranty

Corporation ("PBGC") (Court File No. 63).[1] Chao and PBGC filed a joint response (Court File No.

64). Geiger filed a reply (Court File No. 83).

Plaintiffs Chao and PBCG (collectively "Plaintiffs") filed a motion for summary judgment

---

[1] All citations to the Court File will be to lead case 1-04-cv-1 unless otherwise noted.

against Defendants Dan Geiger, USA Mining, Inc., USA Bullion, Inc. (collectively "Defendants") and Bugsy Malone's Speakeasy, LLC ("Bugsy's") (Court File No. 129). Geiger filed a response to Plaintiffs' motion for summary judgment (Court File No. 144). Plaintiffs filed a reply (Court File No. 147).

For the following reasons, the Court will **DENY** Geiger's motion to dismiss (Court File No. 63) and will **GRANT IN PART** and **DENY IN PART** Plaintiffs' motion for summary judgment (Court File No. 129). The Court will **RESERVE** ruling on damages pending the submission of a revised damage calculation.

## I.    RELEVANT FACTS

### A.    The alleged fiduciaries and parties in interest

SCT Yarns, Inc. ("SCT") was a Delaware corporation with operations located in Chattanooga, Tennessee and Washington, Georgia (Court File Nos. 1, 12). The SCT Yarns, Inc. Retirement Plan for Hourly Employees and the SCT Yarns, Inc. Retirement Plan for Salaried Employees ("the Plans") were employee benefit plans governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461 (Court File No. 131, ex. A). SCT sponsored the Plans and served as the administrator of the Plans (Court File Nos. 1, 12). At all relevant times, Kenneth H. Combs, Jr. ("Combs") was the Plans' trustee and the Chief Executive Officer, Director and majority owner of SCT (*id.*).

USA Mining, Inc. ("USAM") was incorporated in the State of Nevada on July 9, 1996 (*id.*). Defendant Geiger was the Chief Executive Officer and majority owner of USAM (*id.*). USAM's stock was neither a publicly offered security nor a security issued by an investment company

registered under the Investment Company Act of 1940, 15 U.S.C. §§ 80(a)(1)-(a)(64) (*id.*). USAM was a court appointed receiver of a mining project consisting of approximately five hundred twenty-five claims located in California (Court File No. 12). USAM intended to develop the land, clean up the title, and sell the land (Court File No. 131, ex. B). USAM had permits to explore and recycle on the land but did not have the permits required to mine (*id.*). USAM did not produce a product or service (*id.*).

USA Bullion Resources, Inc. ("USAB") was incorporated in the State of Nevada on January 2, 2000 (Court File Nos. 1, 12). USAM became a wholly-owned subsidiary of USAB on January 7, 2000 (*id.*). The Plans' USAM holdings were exchanged for USAB stock (*id.*). USAB's purpose was to act as a holding company for USAM and to protect Geiger and the Plans from liability (Court File No. 133, ex. B). USAB's shares were not offered or registered for public sale, and USAB was not an investment company registered under the Investment Company Act of 1940 (*id.*). At all relevant times, Geiger was the Chief Executive Officer and majority shareholder of USAB (Court File Nos. 1, 12). Combs was the Chairman of the Board of Directors of USAB (Court File No. 131, ex. B).

On October, 11, 1999, Bugsy's was incorporated in Nevada (Court File Nos. 1, 12). Bugsy's was described as a 624-room, $150,000,000 hotel and casino project with a Roaring Twenties theme that would cater to dot-com millionaires (*id.*). Geiger was Bugsy's majority shareholder (id.).

Tri-States Machinery Leasing, Inc. ("Tri-States") was a Tennessee corporation wholly-owned by Combs (*id.*). Combs was the president and director of Tri-States (*id.*). USAB entered into an independent contractor agreement with "Tri-States Leasing (Ken Combs)" where USAB agreed to pay Combs $25,000 per month (Court File No. 133, ex. X).

## B.	Plan money to USAM and USAB

On September 24, 1999, USAM borrowed $3,500,000 from the Plans (Court File Nos. 1, 12). The loan was secured by an assignment of the deed of trust of USAM's mining claims (Court File No. 132, ex. G). The promissory note provided that USAM would repay the Plans $4,500,000 by March 21, 2000 (*id.*). The loan's interest rate was 18 percent per annum with $315,000 to be prepaid (*id.*). Geiger personally guaranteed the loans (*id.*). Geiger did not provide any documents to the Plans reflecting his financial ability to guarantee the loan of $3,500,000 (*id.*). USAM used the Plans' funds to disburse $910,000 to Geiger for an officer loan, $33,530.80 to Air-O-Sea Cargo and $52,681.07 to the IRS for taxes owed by Geiger (*id.*).

On December 3, 1999, the Plans' loan to USAM was converted to a twenty-five percent equity stock holding in USAM (*id.*). Simultaneously, Combs committed the Plans to contribute an additional $2,700,000 to fund all future capital needs of USAM (*id.*). As part of the equity conversion, Combs became Chairman of the Board of Directors of USAM (*id.*). On December 14, 2003, USAM received $730,000 from the Plans. The money was used to fund USAM's payroll and to pay other obligations (*id.*).

On January 18, 2000, USAM received $1,965,668 from the Plans (*id.*). USAM transferred $200,000 to its payroll account and $1,000,000 to USAB (*id.*). As a result of the transfer, the Plans' equity ownership in USAB increased to forty percent (*id.*).

On April 7, 2000, USAB received $500,000 that the Plans had previously invested in the Royalton-Protected Fund, Ltd. ("Royalton") (Court File No. 141. exs. NN, PP). USAB received a loan of $400,000 and wired the remaining $100,000 to the Plans (court File No. 141, ex. NN). USAB used the funds to pay $200,000 to Tri-States to repay a promissory note (Court File No. 141,

ex. NN).  On September 29, 2000, $75,000 of the Plans' assets was used to pay USAM's debt at Premier Aviation (Court File No. 144, exs. PP, QQ).  Furthermore, in September 2000 USAM received an additional $72,500 from the Plans (*id.*).

### C. Relationship to Bugsy's and Tri-States

On February 11, 2000, the Plans and Bugsy's entered into an equity funding agreement where the Plans agreed to fund up to thirty percent of the cost associated with the purchase and development of two parcels of land in Reno for a planned hotel and casino (*id.*).  Additionally, USAM, USAB and Tri-States collectively transferred or lent Bugsy's more than $1,000,000 after becoming the Plans' fiduciaries (*id.*).  According to an independent accountant's report issued on March 31, 2001, Bugsy's owed USAM $992,404 on a promissory note (Court File No. 139, ex. FF).

On January 14, 2000, USAM paid $25,000 to Tri-States (Court File nos. 1, 12).  Between January 14 and May 30, 2000, USAM paid Tri-States an additional $87,500 (*id.*).  On February 8, 2000, USAB wired Tri-States $200,000 (*id.*).  On May 5, 2000, Tri-States wrote a check in the amount of $50,000 to Bugsy's (*id.*).

### D. Defendants' use of the Plans' assets to pay debts

On November 9, 2000, Tim Manson and Patterson Corey, associates of Combs, executed a promissory note lending $30,000 to USA Mining and Ken Combs (Court File No. 141, ex. RR).  The promissory note provided for repayment of $60,000 on or before November 20, 2002 (*id.*).  The promissory note was paid by Tri-States (Court File No. 141, exs. SS, TT).  On December 1, 2000, a second promissory note was issued where USAM and Combs borrowed $105,000 from Patterson Corey (Court File No. 141, ex. VV).  The promissory note provided Patterson Corey would be paid $126,000 by December 11, 2000 (*id.*).  Patterson was paid $130,000 with the Plans' funds on

January 4, 2001 (Court File No. 141, ex. WW).

**E.      USAB stock purchase agreement and reverse merger**

On March 17, 2000, USAB and the Plans entered into a stock purchase agreement (Court File Nos. 1, 12).  The agreement provided that upon the sale of USAM, the Plans would relinquish their forty percent ownership interest in USAB for $10,200,000 (*id.*).  As part of the stock purchase agreement, Combs pledged the Plans' assets to USAM's creditors (Court File No. 131, ex. B).  The Plans' assets secured a loan from Equity Capital Group, Inc. in the amount of $600,000.  (Court File No. 139, ex. LL).  When USAM defaulted, Equity Capital Group, Inc. filed suit against the Plans (*id.*).  The Plans were forced to liquidate assets to satisfy the secured loan (Court File No. 139, ex. KK).

On September 15, 2000, the stock purchase agreement was amended and the Plans exchanged the USAB shares for a straight note in the amount of $10,200,000 due December 31, 2000 (Court File No. 31, ex. B).  No security was given for the note (*id.*).

USAB merged into USAM under a reverse merger effective December 31, 2000 (Court File Nos. 1, 12).  On April 1, 2001, Geiger and Combs executed a fixed rate promissory note between the Plans, USAB and USAM for $7,200,000 at nine percent interest per annum, payable by December 31, 2002 (*id.*).  USAB and USAM are in default on the April 1, 2001 note and have only paid $65,000 on the note (*id.*, Court File No. 131, ex. B).

**F.      Plans' terminations**

 The Plans terminated when PBGC became the statutory trustee under 29 U.S.C. § 1342(c) on May 11, 2001 (Court File No. 141, exs. XX, YY).  David Barton, financial analyst with PBGC, calculated the liability of USAM, USAB and Geiger to be $10,286,614.47 (Court File No. 141, ex.

ZZ).  Bugsy's liability is calculated to be $191,766.21 (*id.*).


II.     **PROCEDURAL HISTORY**

On January 1, 2000, Chao brought suit against Defendants and Bugsy's seeking damages for violations of ERISA (Court File No. 1).  PBGC initiated a civil action against Defendants and Bugsy's on May 10, 2004 (1-04-cv-138, Court File No. 1).  This Court consolidated the two cases and designated Case No. 1-04-CV-1 as the lead case (Court File No. 34).

Geiger was criminally convicted in the Eastern District of Tennessee before the Court on August 16, 2004 (Case No. 1-02-cr-187, Court File No. 221).  Geiger was convicted of violations of 18 U.S.C. §§ 1343, 1954, 1956(h) and 1957 (Case No. 1-02-cr-187, Court File No. 323).  Geiger's criminal convictions stem from the same underlying events that resulted in Plaintiffs' civil actions (Case No. 1-02-cr-187, Court File No. 221).  Geiger was ordered to pay $6,700,000 in restitution to PBGC as part of his sentence (Case No. 1-02-cr-187, Court File No. 323).  Geiger's criminal case is currently on appeal (Case No. 1-02-cr-187, Court File No. 321).

III.    **GEIGER'S MOTION TO DISMISS**

A.      **Standard of review**

Although Geiger's motion to dismiss does not state what rule it is brought under, the Court interprets it as a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6).  A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure requires the Court to construe the complaint in the light most favorable to the plaintiff, accept all the complaint's factual allegations as true and determine whether "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46,

78 S. Ct. 99, 101-02, 2 L. Ed. 2d 80 (1957). *See also Cameron v. Seitz*, 38 F.3d 264, 270 (6th Cir. 1994). The Court may not grant such a motion to dismiss based upon a disbelief of a complaint's factual allegations. *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995) (noting courts should not weigh evidence or evaluate the credibility of witnesses); *Lawler v. Marshall*, 898 F.2d 1196, 1199 (6th Cir. 1990). The Court must liberally construe the complaint in favor of the party opposing the motion. *Miller*, 50 F.3d at 377. The complaint, however, must articulate more than a bare assertion of legal conclusions. *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988). "[The] complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Id.* (citations omitted).

## B.     Analysis

Geiger filed a motion to dismiss claiming Plaintiffs' civil actions violate the Fifth and Eighth Amendments of the United States Constitution (Court File No. 63). Specifically, Geiger claims Plaintiffs are violating the Double Jeopardy Clause of the Fifth Amendment and the Excessive Fines Clause of the Eighth Amendment. *See* U.S. CONST. amends. V, VIII. The relevant provision of the Fifth Amendment provides no "person [shall] be subject for the same offense to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. The Eighth Amendment provides "nor [shall] excessive fines [be] imposed." U.S. CONST. amend. VIII. The Court will address each argument in turn.

### 1. Double Jeopardy

Geiger claims Plaintiffs' actions must be dismissed because they violate the Fifth Amendments' prohibition of double jeopardy for the same offense. Geiger claims the civil cases are brought for retributive punishment and deterrent purposes. Furthermore he argues the suits seek

non-remedial judgments and are equivalent to a second prosecution for his conduct (Court File No. 63). Only criminal punishment runs afoul of the Double Jeopardy Clause. *Hudson v. United States*, 522 U.S. 93, 99 (1997).[2]

When determining if a successive punishment violates the Double Jeopardy Clause, a court must determine if the legislature has expressly or impliedly categorized the proceeding as civil or criminal. *Id*. If the punishment is civil, a court must determine if the statutory scheme is so punitive in purpose or effect as to transform the penalty into a criminal sanction. *Id*. (citations omitted). To make this determination, a court should look at the following factors:

> (1) "whether the sanction involves an affirmative disability or restraint"; (2) "whether it has historically been regarded as a punishment"; (3) "whether it comes into play only on a finding of *scienter*"; (4) "whether its operation will promote the traditional aims of punishment -- retribution and deterrence"; (5) "whether the behavior to which it applies is already a crime"; (6) "whether an alternative purpose to which it may rationally be connected is assignable for it"; and (7) "whether it appears excessive in relation to the alternative purpose assigned."

*Id*. at 99-100 (citation omitted). The factors are applied to the face of the relevant statute with "only the clearest proof suffic[ing] to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Id*. at 100 (internal quotation marks omitted) (citation omitted).

Plaintiffs bring their actions pursuant to ERISA's civil enforcement provisions. 29 U.S.C. § 1132. Plaintiffs are both empowered to bring their suits under 29 U.S.C. § 1132. Because Congress has designated this type of action as civil, there must be "the clearest proof" the punishment is criminal. *Hudson*, 522 U.S. at 104.

---

[2] The Court notes Geiger's reliance on *United States v. Halper*, 490 U.S. 435 (1989) is misplaced as the decision was overturned in *Hudson v. United States*, 522 U.S. 93, 101 (1997).

The Court will now examine the factors to determine if the effect of ERISA transforms the penalty into a criminal sanction. First, the civil penalties and injunction Plaintiffs seek are not an affirmative disability or restraint. In *Hudson*, where the petitioner was prohibited from participating in the banking industry and was forced to pay a civil fine, the Supreme Court stated this punishment was "certainly nothing approaching the 'infamous punishment' of imprisonment." *Id*. Because the relief sought by Plaintiffs is for monetary damages and injunctive relief, the possible sanctions do not involve an "affirmative disability or restraint." *Id*.

Second, the possible sanctions in this case have not been historically regarded as punishment. The *Hudson* court found similar sanctions could not be characterized as "so punitive in form and effect as to render them criminal despite Congress' intent to the contrary." *Id*. Third, no finding of scienter is required to find Geiger liable under ERISA. A violation of fiduciary duty under ERISA is actionable regardless of the defendant's state of mind.

Fourth, the Court does note a finding of liability and injunctive relief will deter future prospective wrongdoers. However, the *Hudson* court found "the mere presence of this purpose is insufficient to render a sanction criminal, as deterrence may serve civil as well as criminal goals." *Id*. at 105. The mere presence of a deterrent effect in this case is not enough. *Id*. Fifth, the fact that criminal prosecution arises from the same facts is not enough to transform the punishment into criminally punitive sanctions. *See id*. (holding fact that petitioner was indicted for same conduct was not enough to transform injunction and civil penalties into criminal punishment). Lastly, recouping the losses for the Plans and barring Geiger from being a trustee for benefit plans in the future is rationally related to the legitimate government objective, is connected to the loss incurred and is not excessive because Plaintiffs only seek what was lost as a result of Geiger's actions. Because there

is no clear proof of punishment, Plaintiffs' civil actions do not violate the Fifth Amendment prohibition against double jeopardy.

## 2. Excessive Fines

The Supreme Court has held the Excessive Fines Clause of the Eighth Amendment applies "primarily, and perhaps exclusively, to criminal prosecutions and punishments." *Browning-Ferris Indus. v. Kelco Disposal*, 492 U.S. 257, 262 (1989). [T]he text of the Amendment points to an intent to deal only with the prosecutorial powers of government." *Id*. at 275. "[T]he history of the Eighth Amendment convinces us that the Excessive Fines Clause was intended to limit only those fines directly imposed by, and payable to, the government." *Id*. at 268.

The Court is not persuaded Plaintiffs' civil actions violate the Eighth Amendment. Any recovery in this case is not a fine under the Eighth Amendment because it would not be a payment to the Government that "constitutes punishment for an offense." *United States v. Bajakajian*, 524 U.S. 321, 328 (1998). Any recovery would be paid to the Government to recover what was lost by the Plans and not as a punishment for the ERISA violation. Furthermore, a judgment for Plaintiffs will not result in double recovery. "Any amount paid to a victim under an order of restitution shall be reduced by any amount later recovered as compensatory damages for the same loss by the victim in any Federal civil proceeding." 18 U.S.C. § 3664(j)(a)(1). Plaintiffs have the authority under ERISA to recover any damage to a benefit plan due to a breach of fiduciary duty. Although Geiger argues any recovery will be grossly disproportionate to the loss, Plaintiffs only seek a remedial recovery to recover any alleged loss caused by Defendants. All money recovered will directly correlate with losses suffered by the Plans. Plaintiffs' prospective recovery will be used for the benefit of the Plans' participants and will not be for the Government's benefit. As such, any

recovery is not a fine proscribed under the Eighth Amendment's Excessive Fines Clause. For the foregoing reasons, the Court will **DENY** Geiger's motion to dismiss.

## IV.     PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

### A.     Standard of review

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). Initially, the burden is on the moving party to conclusively show no genuine issues of material fact exist, *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003), and the Court must view the evidence and draw all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). However, the nonmoving party is not entitled to a trial merely on the basis of allegations, but must come forward with some significant probative evidence to support its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Id.* at 323, 106 S. Ct. at 2552.

The Court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question, but does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Weaver v. Shadoan*, 340 F.3d 398, 405 (6th Cir. 2003). The

standard for summary judgment mirrors the standard for directed verdict. *Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511. The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52, 106 S. Ct. at 2512. There must be some probative evidence from which the jury could reasonably find for the nonmoving party. If the Court concludes a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Id.*; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

### B.    Analysis

ERISA, 29 U.S.C. §§ 1001-1144, was enacted "after almost a decade of studying the Nation's private pension and other employee benefit plans." *Cent. States, Se. and Sw. Areas Pension Fund v. Central Transp., Inc*., 472 U.S. 559, 569 (1985) (internal quotation marks omitted). Congress enacted ERISA to provide "minimum standards that would assure the equitable character of employee benefit plans and their financial soundness." *Id*. at 570 (internal quotation marks omitted). "ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." *Shaw v. Delta Air Lines, Inc*., 463 U.S. 85, 90 (1983). ERISA protects plan participants by "establishing standards of conduct, responsibility and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and access to the federal courts." *Lockheed Corp. v. Spink*, 517 U.S. 882, 887 (1996).

### 1. Defendants' fiduciary status

Plaintiffs claim Defendants breached their fiduciary duties imposed by ERISA. To prevail, Plaintiffs must first prove Defendants were fiduciaries to the Plans. "A person is a fiduciary with

respect to the plan to the extent he exercised any discretionary authority or discretionary control respecting management of such plan or control respecting management or disposition of assets." 29 U.S.C. § 1002(21)(A)(i). Plaintiffs claim Defendants acted as fiduciaries because they exercised "control respecting management or disposition of [the Plans'] assets." *Id.* Plaintiffs do not argue Defendants had direct control over the Plans' assets. Rather, Plaintiffs argue all of the underlying assets of USAM and USAB became the Plans' assets for ERISA purposes when the Plans obtained a significant equity ownership.

The United States Department of Labor has issued regulations defining plan assets. The relevant regulations state:

> Generally, when a plan invests in another entity, the plan's assets include its investment, but do not, solely by reason of such investment, include any of the underlying assets of the entity. However, in the case of a plan's investment in an equity interest of an entity that is neither a publicly-offered security nor a security issued by an investment company registered under the Investment Company Act of 1940 its assets include both the equity interest and an undivided interest in each of the underlying assets of the entity, unless it is established that--
>
> i. The entity is an operating company, or
> ii. Equity participation in the entity by benefit plan investors is not significant.
>
> Therefore, any person who exercises authority or control respecting the management or disposition of such underlying assets, and any person who provides investment advice with respect to such assets for a fee (direct or indirect), is a fiduciary of the investing plan.

29 C.F.R. § 2510.3-101(a)(2). Defendants admit USAM and USAB are not publicly-offered securities and are not securities issued by an investment company registered under the Investment Company Act of 1940. Therefore, unless USAM or USAB are operating companies or the Plans' equity participation is not significant, any individual who exercised control or authority respecting the management or disposition of underlying assets is a

fiduciary of the Plans.

USAM and USAB were not operating companies within the meaning of 29 C.F.R. § 2510.3-101(a)(2). The Department of Labor defines an operating company as "an entity that is primarily engaged, directly or through a majority owned subsidiary or subsidiaries, in the production or sale of a product or service other than the investment of capital." 29 C.F.R. § 2510.3-101(c). Geiger admitted in his deposition that USAM and USAB were holding companies and were not engaged in the production or sale of a product or service. The companies were merely investment vehicles and thus do not fit within the operating company exception.

The undisputed evidence establishes the Plans' equity participation in USAM and USAB was significant after December 3, 1999. "Equity participation in an entity by benefit plan investors is 'significant' on any date if, immediately after the most recent acquisition of any equity interest in the entity, 25 percent or more of the value of any class of equity interests in the entity is held by benefit plan investors." 29 C.F.R. § 2510.3-101(f)(1). The evidence is undisputed that the Plans held at least a twenty-five percent interest in USAM and USAB after December 3, 1999.

Pursuant to the regulations, the Plans had an undivided interest in all of USAM and USAB's assets after December 3, 1999. Every individual who exercised authority or control over the underlying assets owed a fiduciary duty to the Plans. USAM and USAB exercised control over their assets and therefore were fiduciaries of the Plans. Furthermore, Geiger, as Chief Executive Officer of USAB and USAM was a fiduciary to the Plans because he exercised control over USAM and USAB's assets. As such, the undisputed evidence shows

Defendants were fiduciaries because they exercised control over management and disposition of the companies' underlying assets. Defendants' status as fiduciaries resulted in the imposition of a strict set of fiduciary duties under ERISA.

Geiger argues he did not have any knowledge of his fiduciary status, and therefore he cannot be held liable for any breach of his fiduciary duty. However, there is no requirement in the ERISA statute that a fiduciary have knowledge of his status. Congress' intent by establishing strict fiduciary duties would be frustrated if a fiduciary could evade his duties by claiming he had no knowledge of his designation as a fiduciary. *See Donovan v. Mercer*, 747 F.2d 304, 308 (5th Cir. 1984) (quoting H.R. Doc. No. 93-1280) (holding potential fiduciary's state of mind is irrelevant because Congress intended "fiduciary" to be construed broadly and quoted the House Conference report which stated "the definition includes persons who have authority and responsibility with respect to the matter in question, regardless of formal title"). In this case, Defendants knew the Plans had a significant equity stake in USAB and USAM and were aware they exercised control over the management of assets. There is evidence Defendants had knowledge they were squandering plan assets even if they did not know of their designations as fiduciaries. There is no justification for finding Defendants are not fiduciaries because their actions fit squarely within ERISA's prohibitions.

## 2. Prohibited Transactions

Plaintiffs claim Defendants engaged in multiple transactions that are prohibited under ERISA. ERISA provides explicit prohibitions on (1) certain transactions between fiduciaries and parties in interest and (2) certain transactions between fiduciaries and benefit plans. 29

U.S.C. § 1106. The two categories of prohibited transactions will be analyzed individually.

### a. Transactions with parties in interest

Plaintiffs claim Defendants violated 29 U.S.C. § 1106(a)(1) by engaging in transactions with parties in interest. The relevant statute states:

> A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect--
>
> > (B) lending of money or other extension of credit between the plan and a party in interest;
> > . . .
> > (D) transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan.

29 U.S.C. § 1106(a)(1). Plaintiffs allege Defendants engaged in multiple transactions with parties in interest.

To determine if any of the transactions involved in this case violate 29 U.S.C. §1106(a)(1), the Court must first determine what constitutes a party in interest. Congress defined a party in interest as:

> (A) any fiduciary (including, but not limited to, any administrator, officer, trustee, or custodian), counsel, or employee of such employee benefit plan;
> . . .
> (G) a corporation, partnership, or trust or estate of which (or in which) 50 percent or more of--
> > (i) the combined voting power of all classes of stock entitled to vote or the total value of shares of all classes of stock of such corporation,
> > (ii) the capital interest or profits interest of such partnership, or
> > (iii) the beneficial interest of such trust or estate,
> > is owned directly or indirectly, or held by persons described in subparagraph (A), (B), (C), (D), or (E).

29 U.S.C. § 1002(14). Defendants were parties in interest under the relevant regulations because as discussed above, all three are fiduciaries to the Plans' assets. Furthermore, Bugsy's was a party in interest because it was a corporation in which Geiger, a fiduciary of the Plans, was the majority

owner. Tri-States was also a party in interest because the majority owner was Combs, a fiduciary to the Plans.

Courts have strictly construed the prohibition against transactions between fiduciaries and parties in interest. Congress intended to create a category of *per se* violations when it passed 29 U.S.C. § 1106. *Chao v. Hall Holding Co.*, 285 F.3d 415, 439 (6th Cir. 2002) (citation omitted). The Sixth Circuit quoted the reasoning of a district court in the Southern District of New York which explained:

> "Congress (in ERISA § 406) intended to create an easily applied *per se* prohibition . . . of certain transactions, no matter how fair, unless the statutory exemption procedures (of ERISA § 408(a)) are followed." *Cutaiar v. Marshall*, 590 F.2d 523, 529-30 (3d Cir. 1979); *see also Eaves v. Penn*, 587 F.2d 453, 457-59 (10th Cir. 1978). Lack of harm to the plan or the good faith or lack of the same on the part of the borrower are not relevant, and certainly not controlling, under ERISA § 406. Rather, "Congress was concerned in ERISA (§ 406) to prevent transactions which offered a high potential for loss of plan assets or for insider abuse . . . ." (*Marshall v. Kelly*, 465 F. Supp. 341, 354 (W.D. Okla.1978)).

*Id.* (quoting *Reich v. Valley Nat. Bank of Arizona*, 837 F. Supp. 1259, 1281 (S.D.N.Y. 1993)). Therefore, any transaction between a fiduciary and a party in interest constitutes an ERISA violation.

The undisputed facts show there were numerous transactions between Defendants and parties in interest. Plaintiffs must only prove the transactions took place and has no burden to prove the transactions were fair to the Plans. The undisputed material facts show transactions between Defendants and parties in interest included:

> 1. The Plans' promise of $2,700,000 on December 3, 2003 and subsequent acceptance of the funds by Geiger, USAM and USAB;
> 2. The incorporation of USAB and the act of making USAM a wholly-owned subsidiary;

3. The stock purchase agreement between the Plans and USAB made on March 17, 2000;

4. The transfer of at least $1,000,000 of Plan assets to Bugsy's by USAM, USAB and Tri-States;

5. All money transfers between USAM, USAB and Tri-States;

6. The stock purchase agreement that pledged the Plans' assets to secure USAM's loans;

7. The stock purchase agreement between USAB and the Plans that exchanged the Plans' USAB shares for a $10,200,000 straight note;

8. The reverse merger of USAM into USAB on December 31, 2000;

9. The promissory note for $7,200,000 between the Plans and USAB and USAM;

10. USAB's receipt of $500,000 of the Plans' funds invested in Royalton;

11. Issuing promissory notes to Tim Manson and Patterson Corey for $60,000 and $130,000 which were honored with the Plans' assets;

12. Defendants using $75,000 of the Plans' assets to pay a USAM debt on September 29, 2000;

13. USAM receiving $72,500 from the Plans in September 2000.

There is no dispute of material fact that there were numerous violations of 29 U.S.C. § 1106(a)(1). The prohibited transactions themselves entitled Plaintiffs to recover as a result of any losses. *See* 29 U.S.C. § 1109 (stating a fiduciary is liable for any losses incurred as a result of a breach of fiduciary duty).

### b. Transactions between the Plans and fiduciaries

ERISA explicitly prohibits certain transactions by benefit plan fiduciaries. The relevant statute states:

A fiduciary with respect to a plan shall not - -

(1) deal with the assets of the plan in his own interest or for his own account,
(2) in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries.

29 U.S.C. § 1106(b).

The first section of 29 U.S.C. § 1106(b) acts as an absolute bar against self-dealing. *Brock*

*v. Hendershot*, 840 F.2d 339, 341 (6th Cir. 1988).  The undisputed material facts show there are numerous violations of 29 U.S.C. § 1106(b)(1).  Every transaction discussed above is also a breach of fiduciary duty under 29 U.S.C. § 1106(b)(1).  A fiduciary cannot deal with benefit plan assets for his own interest.  USAM and USAB violated this section multiple times because the companies continued to accept loans and money from the Plans to ensure their operations would not collapse.  Geiger further used the Plans' assets to invest in Bugsy's, a corporation in which he was the majority shareholder.  Furthermore, Geiger used the Plans' assets to prop up USAM and USAB in which he owned a majority share.  The repeated inflow of money allowed Geiger to receive a salary of $25,000 per month from USAM and USAB.  Combs violated his fiduciary duty by diverting money from USAM and USAB to Tri-States, a company he owned.  All the transactions outlined above were undertaken for the interests of the fiduciaries and not the Plans in violation of 29 U.S.C. § 1106(b)(1).

The second section of 29 U.S.C. § 1106(b) prohibits any actions that are adverse to the interests of the plan.  A district court in the District of Columbia explained 29 U.S.C. § 1106 by stating:

> Section 406(b) is broader in scope, proscribing self-dealing and certain transactions by fiduciaries. Whereas Section 406(a) is limited to transactions with parties in interest, Section 406(b) is more expansive, proscribing self-dealing or transactions involving parties with interests that are adverse to those of the Plan. *See Reich v. Compton,* 57 F.3d 270, 289 (3rd Cir. 1995). Section 406(b) imposes a duty of undivided loyalty upon fiduciaries, making clear that in the exercise of their authority, fiduciaries may not involve parties with adverse interests. *See* 29 C.F.R. § 2550.408b-2(e)(1); *Compton,* 57 F.3d at 287. Section 406(b) is broadly construed, *Lowen v. Tower Asset Management,* 829 F.2d 1209, 1213 (2nd Cir. 1987); *Leigh,* 727 F.2d at 126, as is the term "adverse interest." *See Sandoval v. Simmons,* 622 F. Supp. 1174, 1213-14 (C.D. Ill. 1985).  To be adverse within the meaning of the ERISA, the interests need not directly conflict but must be sufficiently different. *See id.* at 1213.

*Int'l Bhd. of Painters and Allied Trades Union and Indus. Pension Fund v. Duval*, 925 F. Supp. 815, 825 (D. D.C. 1996).

The undisputed material facts prove USAM, USAB, Geiger and Combs engaged in numerous transactions with parties whose interests were adverse to the Plans' interests. The Plans acted as the lender in all of the outlined transactions. The Plans' fiduciaries acted on behalf of the borrowers and the lender in the same transactions. Instead of ensuring the Plans invested wisely, the Plans' fiduciaries acted in the interests of the borrowers which needed capital. By doing so and disregarding the duty owed to the Plans, Defendants and the other Plans' fiduciaries breached their fiduciary duties by acting on behalf of parties whose interests were adverse to the Plans.

### 3. General fiduciary duties

ERISA mandates a set of general fiduciary duties in 29 U.S.C. § 1104(a)(1) which states:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of
> the participants and beneficiaries and--
>    (A) for the exclusive purpose of:
>       (i) providing benefits to participants and their beneficiaries; and
>       (ii) defraying reasonable expenses of administering the plan;
>    (B) with the care, skill, prudence, and diligence under the circumstances then
>    prevailing that a prudent man acting in a like capacity and familiar with such
>    matters would use in the conduct of an enterprise of a like character and with
>    like aims.

29 U.S.C. § 1104(a)(1). "Clearly, the duties charged to an ERISA fiduciary are the highest known to law." *Hall Holding Co.*, 285 F.3d at 426. *See also Gee v. UnumProvident Corp.*, No. 1-03-CV-147, 2005 WL 534873, *8 (E.D. Tenn. Jan. 13, 2005). In *Kuper v. Iovenko*, 66 F.3d 1447 (6th Cir. 1995), the Sixth Circuit explained the fiduciary duties enumerated under 29 U.S.C. § 1104(a)(1) have "three components":

This court has explained that the fiduciary duties under ERISA encompass three

> components. The first is a "duty of loyalty" pursuant to which "all decisions regarding an ERISA plan 'must be made with an eye single to the interests of the participants and beneficiaries.'" *Berlin v. Michigan Bell Tele. Co.*, 858 F.2d 1154, 1162 (6th Cir. 1988) (quoting *Donovan v. Bierwirth*, 680 F.2d 263, 271 (2d Cir.), *cert. denied*, 459 U.S. 1069, 74 L. Ed. 2d 631, 103 S. Ct. 488 (1982)). The second obligation imposed under ERISA, the "prudent man" obligation, imposes "an unwavering duty" to act both "as a prudent person would act in a similar situation" and "with single-minded devotion" to those same plan participants and beneficiaries. *Id.* Finally, an ERISA fiduciary must "'act for the exclusive purpose'" of providing benefits to plan beneficiaries. *Id.* (quoting *Donovan*, 680 F.2d at 271). If a fiduciary fails to meet these high standards, he may be held personally liable for any losses to the plan that result from his breach of duty. 29 U.S.C. § 1109(a).

*Id.* at 1458. The undisputed evidence shows Defendants violated their fiduciary duties to the Plans.

### a. Duty of loyalty

Defendants violated their fiduciary duties in multiple transactions. Defendants breached the duty of loyalty because the decisions made by Defendants were not made solely for the benefit of the Plans. As discussed above, USAM, UGAB and Geiger were acting in their self-interest and on behalf of parties with adverse interests when managing the Plans' assets. There do not appear to be any actions taken by Defendants that were taken with the exclusive intent of furthering the Plans' interests. Defendants obtained money from the Plans and used the money to further their own interests through self-dealing and waste. Defendants continued to allow money from the Plans to be transferred to USAB and USAM after the initial investment failed to produce a return. The Plans' assets were used to satisfy payroll and to pay off outstanding loans of USAM and USAB. There is no evidence Defendants engaged in any transactions designed to create a return on the Plans' investment. Defendants were fiduciaries when these transactions occurred and were acting in their own self-interest rather than fulfilling the duty of loyalty owed to the Plans. Defendants' actions constituted a clear breach of their duty of loyalty to the Plans.

### b. Duty to act as prudent person

Defendants' actions did not conform to the way a prudent person with a single devotion to the Plans would have acted in a similar situation. A prudent person acting for the Plans would not have allowed the Plans to continue to invest money into USAM and USAB despite the apparent waste of funds. Furthermore, a prudent person would not have transferred large amounts of money to entities such as Bugsy's and Tri-States when these investments had no prospect of creating wealth for the Plans. Defendants continued to seek and use additional Plans' assets to keep USAM and USAB afloat after Defendants knew there would be no sale of USAM's assets. Furthermore, a prudent person would not allow the Plans' assets to be used to pay the debts of USAM and USAB with no prospect of a return on the Plans' investment. Finally, Defendants breached their fiduciary duty by allowing the Plans to guarantee loans for USAM and USAB when the companies had no ability to repay the loans. Defendants violated the prudent person standard because a prudent person would have refused to invest any more funds into USAM or USAB after the initial investment could not be repaid.

### c. Exclusive purpose for plan benefit

Lastly, Defendants' fiduciary duties required them to act for the exclusive purpose of providing benefits to the Plans. As discussed above, the undisputed evidence shows Defendants acted for themselves and not for the Plans. Defendants allowed Plans' assets to be diverted to Bugsy's for the benefit of Combs and Geiger. The evidence shows Defendants did not enter into any transactions for the exclusive benefit of the Plans. The evidence shows Defendants continued to seek and use the Plans' assets for Defendants' benefit despite a complete lack of return on the Plans' previous investments. There is no dispute of material fact that Defendants breached the fiduciary duties they owed to the Plans in violation of 29 U.S.C. § 1104. As such, Defendants are

liable under 29 U.S.C. § 1109.  *See Kuper*, 66 F.3d at 1458 ("If a fiduciary fails to meet [the] high standards of [29 U.S.C. § 1104], he may be held personally liable for any losses to the plan that result from his breach of duty.").

### 4.  Knowing participation in ERISA breach

Plaintiffs also claim Defendants are liable for the fiduciary breaches of their fellow fiduciaries.  A fiduciary can be liable for another fiduciary's breach if the fiduciary had knowledge of the breach and did not make reasonable efforts to remedy the breach.  The relevant ERISA provision provides:

> (a) Circumstances giving to liability. In addition to any liability which he may have under any other provision of this part [29 USCS §§ 1101 et seq.], a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:
> (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;
> (2) if, by his failure to comply with section 404(a)(1) [29 USCS § 1104(a)(1)] in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or
> (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

29 U.S.C. § 1105.  A fiduciary who did not participate in the wrongdoing can be held liable for the wrongdoing if that fiduciary knew of the other fiduciary's wrongdoing and did not make an effort to remedy the situation.  *Bryant v. Int'l Fruit Prod. Co*., 886 F.2d 132, 134 (6th Cir. 1989) (citing 29 U.S.C. § 1105).

Plaintiffs claim Defendants violated 29 U.S.C. § 1105(a) because Geiger, USAM, USAB and Combs had knowledge of each other's fiduciary breaches, and Defendants failed to take action to remedy the harm caused to the Plans.  The evidence establishes USAB, USAM, Geiger and Combs knew of the transactions that involved the receipt or distribution of the Plans' assets.  Furthermore,

USAM, USAB, Geiger and Combs had knowledge of transfers to Tri-States and Bugsy's because all were involved in dispersing the funds. There is a causal connection between the fiduciary breaches and the resulting losses. As such, Defendants had a duty to use reasonable efforts to remedy the breaches, and the evidence is undisputed that there was no attempt to remedy any of the numerous breaches. The evidence proves Defendants and Combs participated in concert to produce the fiduciary breaches for their own benefit, and Defendants took no steps to remedy any fiduciary breaches. Therefore, under 29 U.S.C. § 1105, Defendants are liable for the fiduciary breaches of the other Defendants and liable for Combs' fiduciary breaches that involved USAM and USAB.

### 5. Disgorgement from Bugsy's

Plaintiffs argue all money transferred to Bugsy's can be recovered using equitable remedies. Plaintiffs claim they are entitled to recover from Bugsy's under 29 U.S.C. § 1132(a). The common law of trusts is used as a starting point for ERISA interpretation unless it is inconsistent with the statutory framework. *Harris Trust & Sav. Bank v. Solomon Smith Barney*, 530 U.S. 238, 250 (2000). The Supreme Court explained:

> [I]t has long been settled that when a trustee in breach of his fiduciary duty to the beneficiaries transfers trust property to a third person, the third person takes the property subject to the trust, unless he has purchased the property for value and without notice of the fiduciary's breach of duty. The trustee or beneficiaries may then maintain an action for restitution of the property (if not already disposed of) or disgorgement of proceeds (if already disposed of), and disgorgement of the third person's profits derived therefrom.

*Id.* at 250. A transferee is not insulated from restitution by virtue of not being the original wrongdoer. *Id.* at 251. The Supreme Court further explained the process of returning property in equity:

> Whenever the legal title to property is obtained through means or under

circumstances which render it unconscientious for the holder of the legal title to retain and enjoy the beneficial interest, equity impresses a constructive trust on the property thus acquired in favor of the one who is truly and equitably entitled to the same, although he may never, perhaps, have had any legal estate therein; and a court of equity has jurisdiction to reach the property either in the hands of the original wrongdoer, or in the hands of any subsequent holder, until a purchaser of it in good faith and without notice acquires a higher right and takes the property relieved from the trust.

*Id*. at 250-51 (internal quotation marks omitted)(citation omitted).  To recover from a transferee, it must be proved the transferee knew or should have known of the existence of the benefit plan and the circumstances that caused the transfer to be a breach of fiduciary duties.  *Id*. at 251.

The undisputed evidence shows Bugsy's received large amounts of money from USAB, USAM and Tri-States.  All monies transferred to Bugsy's from USAM and USAB were assets of the Plans because the Plans owned an undivided interest in the assets of the companies.  Furthermore, as discussed above, every transfer to Bugsy's was a breach of fiduciary duty.  The transfers were initiated by Geiger acting at USAM or USAB or received by Geiger acting at Bugsy's.  Geiger's knowledge is attributable to Bugsy's because he was acting within the scope of his authority as majority shareholder of Bugsy's.  *City of Monroe Emples. Ret. Sys. v. Bridgestone Corp.*, 339 F.3d 651, 688 (6th Cir. 2005) (attributing officer's awareness to corporation in securities fraud context).  Lastly, there is no evidence the transfers were for value.  All transfers were exchanged for promissory notes without sufficient collateral.  The notes were worthless and were never honored.  As discussed above, all transfers to Bugsy's were a breach of Defendants' fiduciary duties.  As such, the Plans' trustee, PBGC can recover restitution of any property that is not disposed of and disgorgement of any property that has previously been disposed.

**C.      Geiger's response to Plaintiffs' motion for summary judgment**

Geiger does not discuss the facts of the case and does not dispute any material facts in his response to Plaintiffs' motion for summary judgment.[1] Geiger does put forth a brief argument that Plaintiffs' exhibits to their summary judgment motion are hearsay and cannot be considered by the Court. Geiger does not argue any of the documents are not authentic. Instead, Geiger argues because he has not personally authenticated the documents, they cannot be considered by the Court. Geiger also argues his criminal conviction is invalid because Title 18 of the United States Code was not properly passed by Congress. The Court will address each of Geiger's claims individually.

### 1. Authentication

Under Fed. R. Civ. P. 56(e), evidence submitted in support of a motion for summary judgment must be admissible. *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1189 (6th Cir. 1997). If evidence is hearsay, it must be disregarded by the Court. *Id.* "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." FED. R. EVID. 901(a). When determining authenticity, a court may consider a document's "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances." FED. R. EVID. 901(b)(4). A party need only put forth enough evidence that a reasonable juror could find the document is what it is purported to be. *See United States v. Jones*, 107 F.3d 1147, 1150 n.1 (6th Cir. 1997) (quoting 5 JACK B. WEINSTEIN ET AL., WEINSTEIN'S EVIDENCE P 901(a)[01], at 901-19 (1996)) ("The [authentication] rule requires only that the court

---

[1]The Court notes Geiger also attached an affidavit to his response. Much of the lengthy affidavit does not conform to FED. R. CIV. P. 56(e) because it consists of legal arguments and does not state facts based on personal knowledge. The Court considered all parts of Geiger's affidavit that conformed with the Federal Rules. *See United States v. Hodges X-Ray, Inc.* 759 F.2d 557, 561 (6th Cir. 1985) (citations omitted) ("The rule is settled that on a motion for summary judgment a court will disregard only the inadmissible portions of a challenged affidavit offered in support or opposition to the motion and will consider the admissible portions in determining whether to grant or deny the motion.").

admit evidence if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification. The rest is up to the jury.").

In this case Plaintiffs have supplied a detailed affidavit to support the authenticity of their exhibits. The affidavit of Charlene Morrow, investigator with the Employee Benefits Security Administration, describes with particularity the origin of Plaintiffs' exhibits. Many of the documents came from banks and individuals with no incentive to falsify documents. Furthermore, many of the documents are written on Defendants' letterhead and bear the signature of Geiger. Geiger has not disputed the authenticity of any of Plaintiffs' documents. The Court declines to individually address the more than fifty exhibits supplied by Plaintiffs because Geiger fails to raise a specific doubt as to the authenticity of any individual document. The contents, appearance and substance of the documents in conjunction with the surrounding circumstances support a finding that Plaintiffs' exhibits are authentic and can considered by the Court in deciding Plaintiffs' motion for summary judgment.

### 2. Illegal conviction

Geiger argues his conviction was invalid because Title 18 of the United States Code was not properly enacted. Geiger argues the law was not properly passed by the Eightieth Congress in 1947 and 1948. The Court notes this is not the venue for Geiger to challenge the validity of his criminal conviction. Every court that has considered this argument has ruled against the defendant. *See United States v. Risquet*, 426 F. Supp. 2d 310, 311 (E.D. Pa. 2006) (holding statutes properly enacted and even if not properly enacted the court retained jurisdiction pursuant to previously enacted statutes); *United States v. Martinez*, No. 05-423, 2006 WL 1293261, *5 (S.D. Tex. May 6, 2006) (finding laws were properly enacted and defendant's contention was without merit); *Derelth*

*v. United States*, No. 05-205, 2006 WL 1804618, *3 (S.D. Tex. June 27, 2006) (dismissing defendant's argument that laws were not constitutional). Furthermore, as the *Risquet* court discusses, the Supreme Court's numerous discussions and citations to the questioned laws lends support to the proposition they were properly enacted. *Risquet*, 426 F. Supp. 2d at 311. The Court adopts the reasoning in *Martinez* and finds Title 18 of the United States Code was properly enacted.

### D.    Plaintiffs' requested relief

#### 1.    Damages

Plaintiffs have proved there is no dispute of material fact that they are entitled to recover for multiple fiduciary breaches by Defendants. Fiduciaries that breach their duties under ERISA are liable to make restitution to a plan for losses resulting from the breach, any profits the fiduciary received as a result of the breach and other equitable remedies determined by the Court. 29 U.S.C. § 1109. ERISA requires a court to impose personal liability on a fiduciary who breaches their duty. *See* 29 U.S.C. § 1109 ("shall be personally liable to make good to such plan any losses"). Plaintiffs have introduced a detailed calculation of damages resulting from the fiduciary breaches (Court File No. 144, ex. ZZ).

Recovery under ERISA, however, is not without limits. A fiduciary cannot be held liable for breaches that took place prior to becoming a plan fiduciary. *See* 29 U.S.C. § 1109(b) ("No fiduciary shall be liable with respect to a breach of fiduciary duty under this title if such breach was committed before he became a fiduciary."). Plaintiffs do not claim USAB, USAM or Geiger became fiduciaries until December 3, 1999. The explicit statement by Congress in 29 U.S.C. § 1109(b) prohibits Defendants being held liable for the $3,500,000 loan made by the Plans to USAM on September 24, 1999. *See Beauchem v. Rockford Prods.*, No. 01-50134 2004 WL 432328, *2 (N.D.

Ill. Feb. 6, 2004) ("Allowing a fiduciary to be liable for failing to correct a breach committed by prior fiduciaries would destroy the protection of 29 U.S.C. § 1109(b)."). The duty imposed to remedy the fiduciary breaches of others is limited by 29 U.S.C. § 1109(b). Because Defendants were not plan fiduciaries at the time the initial $3,500,000 was invested and used, Plaintiffs cannot recover for the Plans' loss under this theory of recovery. The Court does not foreclose the possibility that Plaintiffs can recover the $3,500,000 under a different theory of liability. Plaintiffs' have demonstrated there is no dispute of material fact that they are entitled to recover damages from Defendants and Bugsy's for all other transactions listed in Court File No. 144, ex. ZZ. Each of the transactions was causally connected with an actionable breach of Defendants' fiduciary duties. A new damage calculation must be submitted by Plaintiffs to determine the exact amount of Plaintiffs' award.

### 2. Permanent injunction

Plaintiff Secretary Chao seeks a permanent injunction to prevent Defendants from acting as fiduciaries or service providers to any ERISA-covered plans. The Court has discretion to enter equitable relief pursuant to 29 U.S.C. § 1132(a) and 29 U.S.C. § 1109. *See, e.g., Reich v. Lancaster*, 55 F.3d 1034, 1054 (5th Cir. 1995) (upholding permanent injunction against defendants where district court concluded defendants committed significant violations of their ERISA fiduciary duties); *Martin v. Feilen*, 965 F.2d 660, 672 (8th Cir. 1992) (imposing permanent injunction on defendants who were guilty of ERISA's prohibition against self-dealing); *Beck v. Levering*, 947 F.2d 639, 642 (2d Cir. 1991) (affirming permanent injunction against defendants because of breach of fiduciary duty and self-dealing in violation of ERISA); *Brock v. Robbins*, 830 F.2d 640 (7th Cir. 1987) (remanding for district court to determine if injunction is appropriate when violation of FMLA

did not result in monetary damages); *Martin v. Rutledge*, 807 F. Supp. 693, 697 (N.D. Ala. 1992) (enjoining defendant from serving as a fiduciary or performing services for any ERISA benefit plan); *Whitfield v. Tomasso*, 682 F. Supp. 1287, 1306-09 (E.D.N.Y. 1988) (same).

The undisputed evidence indicates numerous breaches of fiduciary duty. These violations are significant and caused millions of dollars of financial loss to the Plans. ERISA imposes stringent standards for benefit plan fiduciaries. Defendants' violations were not isolated or made in good faith. The Court concludes the pervasive self-dealing weighs in favor of a permanent injunction against Defendants. The Court determines the goals of ERISA would be furthered by permanently enjoining Defendants from serving as benefit plan fiduciaries in the future.

V.      **CONCLUSION**

For the foregoing reasons, the Court will **DENY** Geiger's motion to dismiss (Court File No. 63) and will **GRANT IN PART** and **DENY IN PART** Plaintiffs' motion for summary judgment (Court File No. 129). The Court will **RESERVE** ruling on damages pending the submission of a revised damage calculation.

An Order Shall Enter.

**/s/**_____
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**