UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | | |
|---|---|---|
| ELAINE L. CHAO, SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR<br>　　Plaintiff,<br><br>v.<br><br>USA MINING INC., USA BULLION RESOURCES, INC., BUGSY MALONE'S SPEAKEASY, LLC, and DAN GEIGER, AN INDIVIDUAL,<br>　　Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 1:04-CV-1 (lead case)<br><br>Chief Judge Curtis L. Collier |
| PENSION BENEFIT GUARANTY CORPORATION,<br>　　PLAINTIFF,<br><br>v.<br><br>USA MINING INC., USA BULLION RESOURCES, INC., BUGSY MALONE'S SPEAKEASY, LLC, and DAN GEIGER, AN INDIVIDUAL,<br>　　Defendants. | ) ) ) ) ) ) ) ) ) ) ) | No. 1:04-CV-138 (consolidated) |

## JUDGMENT ORDER

The two above-captioned actions were commenced by the Plaintiffs, Elaine L. Chao, Secretary of Labor, United States Department of Labor ("Chao") and Pension Benefit Guaranty Corporation ("PBGC") (collectively "Plaintiffs") against Defendants USA Mining, Inc. ("USAM"), USA Bullion Resources, Inc. ("USAB"), Bugsy Malone's Speakeasy, LLC ("Bugsy's"), and Dan Geiger ("Geiger") (collectively "Defendants"). SCT Yarns, Inc. ("SCT") was a Delaware corporation with operations located in Chattanooga, Tennessee and Washington, Georgia (Court File No. 154). The SCT Yarns, Inc. Retirement Plan for Hourly Employees and the SCT Yarns, Inc.

Retirement Plan for Salaried Employees ("the Plans") were employee benefit plans governed by the Employee Retirement Income Security Act of 1974, *as amended*, 29 U.S.C. §§ 1001 *et seq*. ("ERISA") (Court File No. 154). These actions, which have been procedurally consolidated (Court File No. 34), were brought seeking damages for violations of ERISA (Court File No. 131).

On January 24, 2007, the Court issued an order and accompanying memorandum which **DENIED** Geiger's motion to dismiss and **GRANTED IN PART** and **DENIED IN PART** Plaintiffs' joint motion for summary judgment and **RESERVED** ruling on damages pending the submission of a revised damage calculation (Court File Nos.154 & 155). On February 7, 2007, Plaintiffs filed a notice of revised damage calculations (Court File No. 156). None of the Defendants filed a response or objections to this notice.

Based upon the filing of Plaintiffs' revised damage calculations (Court File No. 156), subject to the limitations described in the Court's previous order and memorandum (Court File Nos. 154 & 155)("January Order"), the Court **GRANTS** Plaintiffs' joint motion for summary judgment (Court File No. 129). Accordingly, judgment is **GRANTED** against the Defendants and Plaintiffs are entitled to recover damages from Defendants for all the transactions listed in Court File No. 156[1] as well as injunctive relief as more specifically described herein.

**WHEREFORE** it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that:

1. The Court has jurisdiction over the parties and the subject matter of this action and is empowered to provide the relief herein.

---

[1] In its January Order, the Court found Plaintiffs are entitled to recover damages from Defendants for all transactions, except the initial $3,500,000, listed in Court File No. 144, ex. ZZ (Court File No. 154). The Court made a typographical error in referencing Plaintiffs' damage calculation, which is actually located at Court File No. 140, ex. ZZ.

2. Defendants Geiger, USAM, and USAB are jointly and severally ordered to restore to PBGC, as statutory trustee of the Plans, all losses to the Plans including interest or lost opportunity costs, to disgorge all profits or financial benefits they realized to PBGC for the Plans as a result of the violations described in the January Order, and to correct all prohibited transactions.

3. Defendants Geiger, USAM, USAB, and Bugsy's are jointly and severally ordered to disgorge all profits or financial benefit they realized to PBGC, as statutory trustee of the Plans, as a result of their knowing participation in the violations described in the January Order.

4. The principal amount for which USAM, USAB, and Geiger are jointly and severally liable is $2,854,292, before interest. The principal amount for which Bugsy's is liable is $125,000, before interest. Collectively, these amounts are called the "Liability" in the subsequent paragraph.

5. Interest shall accrue on any unpaid portion of the Liability pursuant to the statutory U.S. Treasury underpayment rate set forth in Section 6621(a)(2) of the Internal Revenue Code, 26 U.S.C. § 6621(a)(2), compounded daily, through the January 24, 2007 entry of judgment. As of that date, USAM, USAB, and Geiger are jointly and severally liable for the amount of $4,775,130.13, including interest, and Bugsy's is liable for $192,777.59, including interest. From January 24, 2007, forward, the statutory rate for post-judgment interest pursuant to 28 U.S.C. § 1961 applies.

6. Any and all releases, contracts, and guaranties between and among the Plans and any and all of the Defendants are rescinded.

7. As to the injunctive relief requested:[2]

---

[2] Even though the Court's January memorandum (Court File No. 154) may be construed to exclude Defendant Bugsy's from the permanent injunction section based upon the Court's definition of "Defendants," that was not the Court's intention. Accordingly, all Defendants including, Geiger, USAM, USAB and Bugsy's, are subject to the permanent injunction contained herein.

A. Defendants are permanently enjoined and restrained from violating the provisions of Title I of ERISA.

B. Defendants are specifically and permanently enjoined from directly or indirectly engaging in any of the following conduct:

(1) Serving as an administrator, fiduciary, officer, trustee, custodian, counsel, agent, employee, adviser, provider of goods or services, consultant, or representative in any capacity, or serving in any capacity that involves decision making authority or custody or control of the monies, plans or assets, of any employee benefit plan;

(2) Providing or rendering to any employee benefit plan services of any kind, including but not limited to, consulting, advising, providing brokerage accounting, or bookkeeping services, representing, making recommendations, bringing any investment to the attention of any employee benefit plan;

(3) Receiving any compensation, consideration, or anything of value from any employee benefit plan, except a benefit received as a participant or beneficiary of a plan to which Defendant has a lawful entitlement, and then only in the amount and in the same circumstances as would any other similarly situated participant or beneficiary;

(4) Soliciting on behalf of itself/himself or others, or agreeing or contracting with, any person Defendants believe or have reason to believe is an administrator, fiduciary, officer, trustee, custodian, counsel, agent, employee, adviser, provider of goods or services, consultant, or representative in any capacity of any employee benefit plan, concerning the employee benefit plan's acquisition or use of goods, services, investments, or other property, or relating in any way to the disposition or use of plan assets;

(5) Directly or indirectly marketing, or selling participation in, or recruiting employers or employees for, any employee benefit plan covered by Title I of ERISA; or

(6) Making any recommendation to, providing any advice to, bringing any investment to the attention of, or in any way facilitating or encouraging any investment by, any person or entity where Defendants believe or have reason to believe that person or entity or any other person or entity may use any such information, advice, or

4

recommendations in connection with transactions involving employee benefit plans.

The Court hereby **DIRECTS** the Clerk of Court to **CLOSE** Case Nos. 1:04-CV-1 and 1:04-CV-138.

**SO ORDERED.**

**ENTER:**

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**

ENTERED AS A JUDGMENT
   s/ *Patricia L. McNutt*
     CLERK OF COURT